1MORAN LAW GROUP, INC.
CATHLEEN COOPER MORAN, I.D. #83758
RENÉE C. MENDOZA, I.D. #139939
1674 N. Shoreline Blvd., Suite 140
Mountain View, CA 94043-1375
Tel.: (650) 694-4700
Fax: (650) 694-4818
E-mail: Cathy@moranlaw.net

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | | |
|---|---|---|
| In Re: | ) | Chapter 13 |
| ANNETTE H. ASPINWALL, | ) | Bankruptcy No. 07-51983 RLE |
| | ) | Date: July 24, 2008 |
| | ) | Time: 2:00 p.m. |
| | ) | Room: 3099 |
| Debtor. | ) | |
| _____ | ) | HON. ROGER L. EFREMSKY |

**MOTION FOR DAMAGES FOR VIOLATION OF AUTOMATIC STAY**

Annette Aspinwall, debtor herein, moves the court for an award of actual and punitive damages against Chase Bank USA; Cherin and Yelsky; and First American Title Company for violations of the automatic stay.

As set out more fully below, Chase, its agents and attorneys have since November, 2007, called repeatedly and written to the debtor in respect to arrears on her prepetition mortgage; extracted money from the debtor under false pretenses that payment would strengthen her case for loan modification; recorded a notice of default on the deed of trust in violation of the automatic stay, and harassed the debtor trying to gain access to the interior of her home in furtherance of the foreclosure.

At all times mentioned herein, Chase had notice of the pendency of the bankruptcy case by means of notice from the court; letters from debtor's bankruptcy attorney, and

oral representations by the debtor.  The actions of Chase are intentional, unlawful, and extremely damaging to a debtor who during the period in question has had two major surgeries and other ongoing health issues.  She has been deprived of the respite from collection efforts which is a center piece of the Bankruptcy Code.

**FACTUAL BACKGROUND**

The debtor filed a case under Chapter 13 on June 30, 2007.

The debtor's home was subject to a second deed of trust in favor of Chase Bank, USA.  Chase was listed on Schedule D and the creditor matrix.

Notice of the bankruptcy was sent to Chase by BNC on July 8, 2007. Beginning on October 11, 2007 and continuing through at least May 31, 2008, Chase, its agents, and attorneys have written, called and publically recorded documents in an attempt to collect a prepetition debt and to conduct a foreclosure sale of the debtor's residence without relief from the automatic stay.

As set forth in the debtor's declaration and the declaration of Cathleen Cooper Moran, the collection department at Chase has unlawfully harassed the debtor to make post petition payments on a pre petition debt.

The debtor got a letter from Chase dated October 11, 2007, announcing changes to her Chase Home Finance Home Equity Line of Credit.

Debtor's counsel wrote Chase on or about October 20, 2007, requesting contact information for the loan modification function at Chase. Counsel's letter included the bankruptcy case number.  Chase never responded to counsel.

Debtor received the first of a barrage of collection actions on or about November 2 when she got a letter with respect to her post petition default.

Chase's collection functionaries began calling in November.  The debtor informed the caller that she was in bankruptcy and that her bankruptcy attorney had requested referral to loss mitigation.  The Chase collector convinced the debtor that her loan modification stood a better chance of acceptance if she made a payment, which she did.

The collector promised to have someone in loss mitigation call the debtor back.

Instead, the next call was from a Masii who permitted the debtor to believe that he was with the loss mitigation department. The debtor faxed Masii information in support of a loan modification including several of the filed bankruptcy schedules and counsel's letter of October 20, referencing the bankruptcy filing.

Chase then wrote to the debtor on December 6, 2007, suspending the HELOC.

Eva from Chase collections called next on December 10, 2007. In the course of the collection call, the debtor mentioned that she, the debtor, was working with Masii in loss mitigation. Eva replied that Masii worked "here in collection"; she provided the debtor with a name and number of someone actually employed in loss mitigation, nearly two months after counsel's request. In the course of this call, the debtor told Eva that she was having surgery on December 12, and would be convalescing at home. The debtor asked that Chase collectors stop calling while she was recovering. The Chase collector responded that "nothing can stop the phone calls."

Chase collectors called the debtor almost daily following her surgery.

The debtor initiated contact with Barbara Stanley in the loss mitigation department and determined that Masii had not forwarded any of the information the debtor provided in support of a loan modification, despite his promise to do so. On Christmas Eve, still attempting to save her home, the debtor faxed more information to Ms. Stanley.

The collection calls continued. One Chase collector, Frieda explained that collection activity would continue, notwithstanding the involvement of the loss mitigation department. Frieda convinced the debtor to make a payment to enhance the likihood of favorable action on a loan modification.

The next round of collection calls started again on February 4 and continued without interruption. The phone was even ringing with a Chase collection call when the debtor returned home from a test that determined she would have to have another major surgery.

February 7, the debtor received an Acceleration Warning in the mail.

On February 27, debtor's bankruptcy counsel again wrote Chase at the Phoenix address and demanded an end to the collection calls.

The debtor had a second surgery on April 2, and began approximately 7 weeks of recovery at home. Contacts between April 2 and May 9 involved the loan modification.

On May 9, 2008, one of the women in the loan modification department called the debtor to tell her that the loan was going to foreclosure. A conference call with Nicole, another woman in the loan modification department resulted in a statement that Nicole would stop the foreclosure if the debtor would provide proof she was paying the senior lien, proof which the debtor provided.

On May 12, 2008, Chase caused a notice of default to be recorded through its attorneys Cherin and Yelsky.

With the recordation of the NOD, the debtor began to get communications from realtors and others prepared to "help" a distressed homeowner.

The debtor was called at home on May 29 by Jack Wong who told the debtor that First American Title Company had engaged him to make an inspection of the interior of the debtor's home. She refused.

First American then called and claimed that Chase had told them that the debtor had been informed about the inspection. The debtor concluded that the loan modification personnel had lied about the foreclosure being a "mistake" in an attempt to take the debtor's home from her.

First American called the debtor on May 30 and when the debtor answered, hung up without speaking. The debtor recognized the phone number from a previous call from First American. The debtor began to worry that First American hoped to find the debtor away from home so they could break in.

Debtor's counsel called the First American number from which the hang up call had been placed and left a message detailing her connection with the debtor and

requesting a call back.  First American never called back.

Debtor's counsel wrote Cherin and Yelsky and Chase separate letters transmitted by facsimilie on May 29, 2008, reciting the pendency of the bankruptcy case and demanding a stop to all collection action including the foreclosure.

Chase did not reply.

Yelsky responded by fax with a handwritten note claiming that the bankrutpcy had been discovered prior to recordation of the notice.

When presented with a copy of the NOD signed by someone from Cherin and Yelsky and proof the recordation of the notice in the Recorder's Office, Santa Clara County, Yelsky replied that the NOD would be withdrawn.  No proof of such withdrawal has been presented as of this writing.

## LEGAL ARGUMENT

The automatic stay of § 362 stays actions against the debtor; the debtor's property; and the property of the estate from efforts to collect or recover a claim against the debtor. The statute provides that the court *shall* award the debtor damages for willful violations of the stay.   The debtor's attorneys fees are an element of actual damages. *Roman v. Eskanos & Adler*, 283 B.R. 1 ( 9th Cir. BAP 2002).

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded. *In re Bloom*, 875 F.2d 224, 227 (9th Cir., 1989) .

Punitive damages are appropriate where  a defendant's conduct was malicious, wanton or oppressive.  Ramirez, 183 B .R. 583 (9th Cir. BAP 1994) citing *Sansone v. Walsworth, 99 Bankr. 981, 987 (Bankr. C.D. Cal. 1989).*

Further, a fair assessment of the actions of the Chase loss mitigation department is

that it functioned as nothing more than a distraction and a cover for the activities of the collection department. While Loss Mitigation assured the debtor that "everything was OK", the collection department initiated a foreclosure proceeding in violation of the automatic stay.

The debtor wishes to be very clear that she does not contend that good faith efforts by a secured creditor to engage in loan modification violate the stay. That is an admirable action and is not the basis of this debtor's complaint. Rather, this motion addresses the actions of the collectors engaged by Chase who sought payment post petition without first obtaining relief from the automatic stay, and, it appears used the use of the promise of loan modification to lull a debtor into inaction while a foreclosure was initiated.

The actions of Chase are doubly reprehensible in light of the debtor's fragile health during this period. The behavior of Chase collectors and Chase's agents has been reckless, wanton, and malicious. It has inflicted stress, anxiety, worry and fear on the debtor. The actions of First American and its agent Wong made the debtor fearful for her safety within the walls of her home.

**CONCLUSION**

The debtor seeks an award of actual damages; exemplary damages in an amount sufficient to deter the actors in the future, and an award of attorneys fees and costs necessary to bring this motion.

MORAN LAW GROUP

Date: _____  _____
CATHLEEN COOPER MORAN
Attorney for Annette Aspinwall